# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

Civil Action No._____
3:21-cv-00930

TINA R. RATCLIFF,

     Plaintiff,

v.

FIRST PREMIER BANK; CB INDIGO;
EQUIFAX INFORMATION SERVICES, LLC;
TRANS UNION, LLC; and EXPERIAN
INFORMATION SOLUTIONS, INC.,

     Defendant,

_____/

## COMPLAINT

**NOW COMES** Tina R. Ratcliff ("Plaintiff"), by and through her undersigned counsel, complaining of the Defendants, First Premier Bank, CB Indigo, Equifax Information Services, LLC, Trans Union, LLC, and Experian Information Solutions, Inc. (collectively, "Defendants"), as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendants' violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681 *et. seq.*

## JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§1331 and 1337 as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because all of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.

## PARTIES

4. Plaintiff is a natural person, over 18-years-of-age, who at all times relevant resided in the Pensacola, Florida.

5. First Premier Bank ("First Premier") maintains its principal place of business at 3820 North Louise Avenue, Sioux Falls, South Dakota 57107.

6. First Premier is a prominent banking institution that provides consumers with various banking services, including mortgage and car loan financing.

7. First Premier is a furnisher of information to the major credit reporting agencies, including Equifax, Trans Union, and Experian.

8. CB Indigo ("Indigo") maintains its principal place of business in Beaverton, Oregon.

9. Indigo is a prominent furnisher of consumer credit cards.

10. Indigo is a furnisher of information to the major credit reporting agencies, including Equifax, Trans Union, and Experian.

11. Equifax Information Services, LLC ("Equifax") is a Delaware limited liability company with its principal place of business located in Atlanta, Georgia.

12. Equifax is engaged in the business of compiling and maintaining files on consumer for the purpose of furnishing consumer reports to third parties bearing on a consumer's creditworthiness, credit standing, or credit capacity.

13. Equifax regularly does business in Florida.

14. Trans Union, LLC ("Trans Union") is a Delaware limited liability company with its principal place of business located in Chicago, Illinois.

15. Trans Union is engaged in the business of compiling and maintaining files on consumers for the purpose of furnishing consumer reports to third parties bearing on a consumer's creditworthiness, credit standing, or credit capacity.

16. Trans Union regularly does business in Florida.

17. Experian Information Solutions, Inc. ("Experian") is an Ohio corporation with its principal place of business located in Costa Mesa, California.

18. Experian is engaged in the business of compiling and maintaining files on consumers for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity.

19. Experian regularly does business in Illinois.

## FACTS SUPPORTING CAUSES OF ACTION

20. In or around February 2021, Plaintiff noticed several accounts reporting on her Equifax, Trans Union, and Experian credit reports that did not belong to her, namely a First Premier Bank account and a CB Indigo account.

21. Realizing that she had become a victim of identity theft, Plaintiff filled out an FTC Identity Theft Report.

22. On February 9, 2021, Plaintiff sent a detailed dispute letter ("the Dispute") to Equifax, Trans Union, and Experian.[1]

23. The Dispute stated, in pertinent part:

    i.    "I have been a victim of identity theft"

    ii.    "I have not authorize[d] or appl[ied] for the [First Premier Bank] or [Indigo] that is appearing on my credit report."

    iii.    "[First Premier Bank] and [Indigo] need to be contacted for verification and then deleted, both the trade line and the inquiry."

    iv.    "I would like you to investigate [these] accounts, forward a copy of my dispute and enclosures to the . . .creditors, and ask them to review and delete the errors they are currently reporting."

    v.    "I ask that you information me if you choose not to forward my letters to the creditors listed in the letter. . ."

---

[1] The substantive language in the dispute letters was identical.

24. Enclosed with these disputes, Plaintiff included the FTC Identity Theft Report, a pay stub, and her social security card.

### Post-Dispute Facts

25. On February 12, 2021, Equifax received the Dispute.

26. On February 24, 2021, Trans Union received the Dispute.

27. On February 20, 2021, Experian received the Dispute.

28. Upon information and belief, First Premier and Indigo both received notice of Plaintiff's disputes and all relevant information from TransUnion, Equifax, and Experian within five days of TransUnion, Equifax, and Experian receiving Plaintiff's disputes. *See* 15 U.S. Code §1681i(a)(2).

29. On or around March 10, 2021, Plaintiff received a letter from Indigo stating that the account would be removed from all three credit reports.

30. On March 31, 2021, Plaintiff pulled a fresh credit report from Equifax, Trans Union, and Experian.

31. Equifax was reporting on the First Premier Account as follows: (1) the tradeline was updated on 3/29/21; (2) a balance on the account of $461; (3) the account was open and past due; and (4) the account was disputed by the Plaintiff.

32. Trans Union was reporting on the First Premier Account as follows: (1) the tradeline was updated on 3/29/21; (2) a balance on the account of $461; (3) the account was open and past due; and (4) the account was disputed by the Plaintiff.

33. Experian was reporting g on the First Premier Account as follows: (1) the tradeline was updated on 3/29/21; (2) a balance on the account of $461; and (3) the account was open and past due.

34.  Notably, Experian did not mark the account as disputed by Plaintiff.

35. Additionally, all three credit bureaus – Equifax, Trans Union, and Experian – were all still reporting hard inquiries for First Premier Bank.

36. All three credit bureaus – Equifax, Trans Union, and Experian – have deleted the Indigo account; however, Defendant Indigo failed to delete the hard inquiry dated July 16, 2020, which still remains on all three credit reports and was a result of identity theft.

**Plaintiff's Damages**

37. As of today, the erroneous reporting of the First Premier and Indigo accounts (collectively, the "subject accounts") continues to paint a false and damaging image of Plaintiff.

38. As a result of Defendants' inaccurate reporting of the subject accounts, Plaintiff hired and paid a company to help fix her credit reports, thus expending time, energy, and money to fix Defendant's inaccurate reporting.

39. Defendants' reckless indifference relating to the inaccurate reporting of the subject accounts has frustrated Plaintiff's ability to control her credit score and her ability to benefit from the credit history she has built over the years.

40. The inaccurate reporting of the subject accounts had significant adverse effects on Plaintiff's credit rating and her ability to obtain credit because it created a false impression that Plaintiff is in default on the First Premier account, rendering Plaintiff a high-risk consumer and damaging her creditworthiness.

41. As a result of Defendants' conduct, Plaintiff has suffered various types of damages as set forth herein, including specifically: humiliation; the loss of credit opportunity; loss of time disputing the inaccurate reporting; time expended monitoring her credit files; money expended to hire a company to help fix her credit reports; mental anguish; emotional distress; and costs associated with obtaining her Equifax, Trans Union, and Experian credit reports.

42. Due to Defendants' refusal to correct the reporting of the subject accounts, Plaintiff was forced to retain counsel to compel Defendants to correct the reporting of the subject accounts.

## COUNT I - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
(Against First Premier Bank)

43. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(b) and (c).

44. Plaintiff is a "person" as defined by 15 U.S.C. §1681a(b).

45. First Premier is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

46. At all times relevant, the above-mentioned credit reports were "consumer reports" as the term is defined by §1681a(d)(1).

47. First Premier violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving requests for an investigation from Equifax, Trans Union, Experian, and Plaintiff.

48. First Premier violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information, namely Plaintiff's FTC Identity Theft Report, provided by Equifax, Trans Union, Experian, and Plaintiff pursuant to 15 U.S.C. §1681i(a)(2).

49. Had Premier reviewed the information provided by Equifax, Trans Union, Experian, and Plaintiff, it would have discovered that Plaintiff was a victim of identity theft and that she did not owe the First Premier account. Instead, Premier wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation.

50. First Premier violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the complete results of the investigation of Plaintiff's disputes with Equifax, Trans Union, and Experian.

51. First Premier violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation to Equifax, Trans Union, and Experian after being put on notice and discovering inaccurate, incomplete, and misleading information with respect to the First Premier account.

52. First Premier violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information from appearing and reappearing in Plaintiff's Equifax, Trans Union, and Experian credit reports.

53. First Premier failed to conduct a reasonable investigation of its reporting of the First Premier account or delete the inaccurate information from Plaintiff's Equifax, Trans Union, and Experian credit reports within 30 days of receiving notice of Plaintiff's disputes from Equifax, Trans Union, and Experian under 15 U.S.C. §1681i(a)(1).

54. First Premier violated 15 U.S.C. §1681s-2(a)(6)(B) by furnishing the disputed information to Equifax, Trans Union, and Experian after it received notice that Plaintiff is a victim of identity theft.

55. First Premier violated 15 U.S.C. §1681s-2(a)(3) by failing to report the First Premier account as disputed by Plaintiff to Experian.

56. Despite the blatantly obvious errors in Plaintiff's Equifax, Trans Union, and Experian credit reports, and Plaintiff's efforts to correct the errors, First Premier did not correct the errors or the trade line to report accurately. Instead, First Premier wrongfully furnished and re-reported the inaccurate and misleading information after Plaintiff's dispute to one or more third parties.

57. A reasonable investigation by First Premier would have confirmed the veracity of Plaintiff's disputes, yet the inaccurate information remains on Plaintiff's Equifax, Trans Union, and Experian credit reports.

58. Had First Premier taken adequate steps to investigate Plaintiff's valid disputes or Equifax, Trans Union, and Experian's requests for investigation, it would have permanently corrected the erroneous and materially misleading information regarding the First Premier account. Plaintiff provided all relevant information to support her valid disputes in her requests for investigation, yet First Premier ignored the supporting evidence and continued to report the inaccurate information regarding the First premier account.

59. Moreover, Plaintiff's credit reports showed that First Premier accessed Plaintiff's credit file without a permissible purpose is a "consumer report" as defined by §1681a(d)(1).

60. The FCRA prohibits any person or entity from using or obtaining a consumer credit report unless the user has a permissible purpose enumerated under the FCRA. *See* 15 U.S.C. §1681b(f).

61. First Premier violated 15 U.S.C. §1681b(f) by requesting and receiving Plaintiff's credit reports without Plaintiff's authorization and without a permissible purpose enumerated in the FCRA.

62. As stated above, Plaintiff does not have a current business relationship with First Premier nor has Plaintiff applied for credit with First Premier as the subject account was added to Plaintiff's credit files as a result of identity theft.

63. First Premier willfully and maliciously violated §1681b(f) when it accessed Plaintiff's credit report without a permissible purpose under the FCRA.

64. In the alternative, First Premier negligently violated §1681b(f) by accessing Plaintiff's credit report without a permissible purpose under the FCRA.

65. As described above, Plaintiff was harmed by First Premier conduct.

66. By deviating from the standards established by the credit industry and the FCRA, First Premier acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Equifax, Trans Union, and Experian.

**WHEREFORE,** Plaintiff respectfully prays this Honorable Court for the following relief:

a. Finding that the practices complained of herein are unlawful and violate the FCRA;

b. Ordering First Premier to delete all of the inaccurate information from Plaintiff's Equifax, Trans Union, and Experian credit reports;

c. Awarding Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d. Awarding Plaintiff statutory damages of $1,000.00 for each of the underlying FCRA violations pursuant to 15 U.S.C. §1681n;

11

e.  Awarding Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations pursuant to 15 U.S.C. §1681n;

f.  Awarding Plaintiff her costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and

g.  Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT II - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
(Against CB Indigo)

67. Indigo is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

68. At all times relevant, the above-mentioned credit reports were "consumer reports" as the term is defined by §1681a(d)(1).

69. Indigo violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving requests for an investigation from Equifax, Trans Union, Experian, and Plaintiff.

70. Indigo violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information, namely Plaintiff's FTC Identity Theft Report, provided by Equifax, Trans Union, Experian, and Plaintiff pursuant to 15 U.S.C. §1681i(a)(2).

71. Had Indigo reviewed the information provided by Equifax, Trans Union, Experian, and Plaintiff, it would have discovered that Plaintiff was a victim of identity theft and that she did not owe the Indigo account. Instead, Indigo wrongfully

and erroneously failed to delete the hard inquiry from Plaintiff's Equifax, Trans Union, and Experian credit reports.

72. Indigo violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the complete results of the investigation of Plaintiff's disputes with Equifax, Trans Union, and Experian.

73. Indigo violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation to Equifax, Trans Union, and Experian after being put on notice and discovering inaccurate, incomplete, and misleading information with respect to the Indigo account.

74. Indigo violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to completely modify, delete, or permanently block the inaccurate information from appearing and reappearing in Plaintiff's Equifax, Trans Union, and Experian credit reports.

75. Indigo failed to conduct a reasonable investigation of its reporting of the Indigo account or delete the inaccurate information from Plaintiff's Equifax, Trans Union, and Experian credit reports within 30 days of receiving notice of Plaintiff's disputes from Equifax, Trans Union, and Experian under 15 U.S.C. §1681i(a)(1).

76. Indigo violated 15 U.S.C. §1681s-2(a)(6)(B) by furnishing the disputed information to Equifax, Trans Union, and Experian after it received notice that Plaintiff is a victim of identity theft.

77. Despite the blatantly obvious errors in Plaintiff's Equifax, Trans Union, and Experian credit reports, and Plaintiff's efforts to correct the errors, Indigo Premier did not correct the errors or the trade line to report accurately. Instead, Indigo wrongfully furnished and re-reported the inaccurate and misleading information after Plaintiff's dispute to one or more third parties.

78. A reasonable investigation by Indigo would have confirmed the veracity of Plaintiff's disputes, yet the inaccurate information remains on Plaintiff's Equifax, Trans Union, and Experian credit reports.

79. Plaintiff's credit reports showed that Indigo accessed Plaintiff's credit file without a permissible purpose is a "consumer report" as defined by §1681a(d)(1).

80. The FCRA prohibits any person or entity from using or obtaining a consumer credit report unless the user has a permissible purpose enumerated under the FCRA. *See* 15 U.S.C. §1681b(f).

81. Indigo violated 15 U.S.C. §1681b(f) by requesting and receiving Plaintiff's credit reports without Plaintiff's authorization and without a permissible purpose enumerated in the FCRA.

82. As stated above, Plaintiff does not have a current business relationship with Indigo nor has Plaintiff applied for credit with Indigo as the subject account was added to Plaintiff's credit files as a result of identity theft.

83. Indigo willfully and maliciously violated §1681b(f) when it accessed Plaintiff's credit report without a permissible purpose under the FCRA.

84. In the alternative, Indigo negligently violated §1681b(f) by accessing Plaintiff's credit report without a permissible purpose under the FCRA.

85. As described above, Plaintiff was harmed by Indigo's conduct.

86. Upon information and belief, Indigo knowingly and systematically obtains consumer credit reports without a permissible purpose prescribed by the FCRA.

87. Upon information and belief, Indigo does not maintain policies and procedures to protect consumers' privacy interests and prevent the unlawful access of consumer credit reports.

88. Indigo's violations have deprived Plaintiff of the right to control her own personal information, which is a major aspect of privacy that is protected by the FCRA.

89. Due to Indigo's unlawful conduct, Plaintiff is entitled to actual damages, statutory damages, and punitive damages.

90. Had Indigo taken adequate steps to investigate Plaintiff's valid disputes or Equifax, Trans Union, and Experian's requests for investigation, it would have permanently corrected the erroneous and materially misleading information regarding the Indigo account. Plaintiff provided all relevant information to support her valid disputes in her requests for investigation, yet Indigo ignored the supporting

evidence and continued to report the inaccurate information regarding the Indigo account.

91. By deviating from the standards established by the credit industry and the FCRA, Indigo acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Equifax, Trans Union, and Experian.

**WHEREFORE,** Plaintiff respectfully prays this Honorable Court for the following relief:

a. Finding that the practices complained of herein are unlawful and violate the FCRA;

b. Ordering Indigo to delete all of the inaccurate information from Plaintiff's Equifax, Trans Union, and Experian credit reports;

c. Awarding Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d. Awarding Plaintiff statutory damages of $1,000.00 for each of the underlying FCRA violations pursuant to 15 U.S.C. §1681n;

e. Awarding Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations pursuant to 15 U.S.C. §1681n;

f. Awarding Plaintiff her costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and

g. Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT III – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
(Against Equifax)

92. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

93. Equifax  is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

94. At all times relevant, the above-mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

95. At all times relevant, Plaintiff was a "consumer" as the term is defined by 15 U.S.C. §1681a(c).

96. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

97. The FCRA requires credit reporting agencies to implement procedures and systems to promote accurate credit reporting.

98. If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information, or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

99. Plaintiff provided Equifax with all relevant information and documentation in her disputes to support her contention that the First Premier and Indigo accounts were fraudulently opened.

100. Upon information and belief, Equifax prepared Plaintiff's credit reports containing inaccurate, incomplete, and materially misleading information by reporting the First Premier account with an outstanding balance and a past due status, when in fact Plaintiff was not liable for the First Premier account as it was opened fraudulently.

101. Upon information and belief, Equifax prepared Plaintiff's credit reports containing inaccurate, incomplete, and materially misleading information by continuing to report the hard inquiries for both First Premier and Indigo, when in fact Plaintiff was not liable for the subject accounts as they were opened fraudulently.

102. A simple review of the relevant documents submitted by Plaintiff would have confirmed that Plaintiff did not open the subject accounts and that Plaintiff was a victim of identity theft.

103. Equifax failed to conduct any meaningful investigation into Plaintiff's disputes. Instead, it continued to blindly report the false information provided to it by First Premier and Indigo.

104. Equifax violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished regarding Plaintiff. Upon information and belief, Equifax prepared patently false, incomplete, and materially misleading consumer reports concerning Plaintiff.

105. Equifax violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the information in Plaintiff's credit file.

106. Had Equifax taken any meaningful steps to investigate Plaintiff's valid dispute, it would have determined that Plaintiff was a victim of identity theft and that the subject accounts were fraudulently opened.

107. Upon information and belief, Equifax took no steps to determine whether the information provided by First Premier or Indigo was accurate or reliable.

108. At very minimum, Equifax could have requested that First Premier or Indigo provide proof that Plaintiff opened the subject accounts as Plaintiff specifically requested in her dispute. Instead, Equifax continued to recklessly report false and unreliable information regarding the subject accounts.

109. Equifax violated 15 U.S.C. §1681i(a)(2) by failing to provide adequate notification of Plaintiff's disputes to First Premier. Upon information and belief,

Equifax also failed to include all relevant information as part of the notice to First Premier regarding Plaintiff's dispute that Equifax received from Plaintiff.

110. Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff with regard to the subject accounts.

111. Equifax violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the inaccurate information that was the subject of Plaintiff's dispute.

112. Equifax violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from First Premier or Indigo that the information was complete and accurate, and without sending notice of re-reporting to Plaintiff.

113. Equifax violated 15 U.S.C. §1681c-2(a) by failing to block the information pertaining to the subject accounts within 4 days of Plaintiff notifying Equifax of the identity theft.

114. Equifax violated 15 U.S.C. §1681c-2(b) by failing to promptly notify First Premier and Indigo that the disputed information may be a result of identity theft and that a block of the disputed information is mandated by 15 U.S.C. §1681c-2(a).

115. Equifax violated 15 U.S.C. §1681c-2(c) by failing to promptly notify Plaintiff within the timeframe prescribed by 15 U.S.C. §1681i(a)(5)(B) that Equifax has declined to block the disputed information.

116. Equifax knew that the inaccurate reporting of the subject accounts as belonging to Plaintiff would have a significant adverse effect on Plaintiff's credit worthiness and ability to obtain credit.

117. The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

118. Despite actual knowledge that Plaintiff's credit file contained erroneous information, Equifax readily furnished Plaintiff's inaccurate and misleading reports to one or more third parties, thereby misrepresenting facts about Plaintiff and Plaintiff's creditworthiness.

119. By deviating from the standards established by the credit reporting industry and the FCRA, Equifax acted with a reckless disregard for its duties to report accurate and complete consumer credit information.

120. It is Equifax's regular business practice to repeatedly report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

121. Equifax's non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiff's credit file and reporting her credit information accurately.

122. Equifax acted reprehensively and carelessly by repeatedly reporting the subject accounts inaccurately when it knew or should have known that First Premier

and Indigo were transmitting false information regarding the subject debts to Equifax.

123. Equifax has exhibited a pattern of refusing to correct errors in consumer credit files despite being on notice of patently false and materially misleading information contained in such files, ultimately valuing its own bottom line above its grave responsibility to report accurate data.

124. As stated above, Plaintiff was significantly harmed by Equifax's conduct.

**WHEREFORE**, Plaintiff respectfully pray this Honorable Court for the following relief:

a. Finding that the practices complained of herein are unlawful and violate the FCRA;

b. Ordering Equifax to delete all of the inaccurate information pertaining to the subject accounts from Plaintiff's credit file;

c. Awarding Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d. Awarding Plaintiff statutory damages of $1,000.00 for each of the underlying FCRA violations pursuant to 15 U.S.C. §1681n;

e. Awarding Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations pursuant to 15 U.S.C. §1681n;

f. Awarding Plaintiff her costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and

g. Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT IV – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

(against Experian)

125. Experian is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

126. Experian is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

127. At all times relevant, the above-mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

128. At all times relevant, Plaintiff was a "consumer" as the term is defined by 15 U.S.C. §1681a(c).

129. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

130. The FCRA requires credit reporting agencies to implement procedures and systems to promote accurate credit reporting.

131. If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information, or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

132.  Plaintiff provided Experian with all relevant information and documentation in her disputes to support her contention that the First Premier and Indigo accounts were fraudulently opened.

133. Upon information and belief, Experian prepared Plaintiff's credit reports containing inaccurate, incomplete, and materially misleading information by reporting the First Premier account with an outstanding balance and a past due status, when in fact Plaintiff was not liable for the First Premier account as it was opened fraudulently.

134. Upon information and belief, Experian prepared Plaintiff's credit reports containing inaccurate, incomplete, and materially misleading information by continuing to report the hard inquiries for both First Premier and Indigo, when in fact Plaintiff was not liable for the subject accounts as they were opened fraudulently.

135. A simple review of the relevant documents submitted by Plaintiff would have confirmed that Plaintiff did not open the subject accounts and that Plaintiff was a victim of identity theft.

136. Experian failed to conduct any meaningful investigation into Plaintiff's disputes. Instead, it continued to blindly report the false information provided to it by First Premier and Indigo.

137. Experian violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished regarding Plaintiff. Upon information and belief, Experian prepared patently false, incomplete, and materially misleading consumer reports concerning Plaintiff.

138. Experian violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the information in Plaintiff's credit file.

139. Had Experian taken any meaningful steps to investigate Plaintiff's valid dispute, it would have determined that Plaintiff was a victim of identity theft and that the subject accounts were fraudulently opened.

140. Upon information and belief, Experian took no steps to determine whether the information provided by First Premier or Indigo was accurate or reliable.

141. At very minimum, Experian could have requested that First Premier or Indigo provide proof that Plaintiff opened the subject accounts as Plaintiff specifically requested in her dispute. Instead, Experian continued to recklessly report false and unreliable information regarding the subject accounts.

142. Experian violated 15 U.S.C. §1681i(a)(2) by failing to provide adequate notification of Plaintiff's disputes to First Premier. Upon information and belief,

Experian also failed to include all relevant information as part of the notice to First Premier regarding Plaintiff's dispute that Experian received from Plaintiff.

143. Experian violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff with regard to the subject accounts.

144. Experian violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the inaccurate information that was the subject of Plaintiff's dispute.

145. Experian violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from First Premier or Indigo that the information was complete and accurate, and without sending notice of re-reporting to Plaintiff.

146. Experian violated 15 U.S.C. §1681(c)(f) by failing to notate that Plaintiff disputed the reporting of the First Premier account. Experian is required to notate each account that a consumer disputes in each consumer report that includes the disputed information.

147. Experian violated 15 U.S.C. §1681c-2(a) by failing to block the information pertaining to the subject accounts within 4 days of Plaintiff notifying Experian of the identity theft.

148. Experian violated 15 U.S.C. §1681c-2(b) by failing to promptly notify First Premier and Indigo that the disputed information may be a result of identity theft and that a block of the disputed information is mandated by 15 U.S.C. §1681c-2(a).

149. Experian violated 15 U.S.C. §1681c-2(c) by failing to promptly notify Plaintiff within the timeframe prescribed by 15 U.S.C. §1681i(a)(5)(B) that Experian has declined to block the disputed information.

150. Experian knew that the inaccurate reporting of the subject accounts as belonging to Plaintiff would have a significant adverse effect on Plaintiff's credit worthiness and ability to obtain credit.

151. The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

152. Despite actual knowledge that Plaintiff's credit file contained erroneous information, Experian readily furnished Plaintiff's inaccurate and misleading reports to one or more third parties, thereby misrepresenting facts about Plaintiff and Plaintiff's creditworthiness.

153. By deviating from the standards established by the credit reporting industry and the FCRA, Experian acted with a reckless disregard for its duties to report accurate and complete consumer credit information.

154. It is Experian's regular business practice to repeatedly report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

155. Experian's non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiff's credit file and reporting her credit information accurately.

156. Experian acted reprehensively and carelessly by repeatedly reporting the subject accounts inaccurately when it knew or should have known that First Premier and Indigo were transmitting false information regarding the subject debts to Experian.

157. Experian has exhibited a pattern of refusing to correct errors in consumer credit files despite being on notice of patently false and materially misleading information contained in such files, ultimately valuing its own bottom line above its grave responsibility to report accurate data.

158. As stated above, Plaintiff was significantly harmed by Experian's conduct.

**WHEREFORE**, Plaintiff respectfully pray this Honorable Court for the following relief:

a. Finding that the practices complained of herein are unlawful and violate the FCRA;

b. Ordering Experian to delete all of the inaccurate information pertaining to the subject accounts from Plaintiff's credit file;

c.  Awarding Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d.  Awarding Plaintiff statutory damages of $1,000.00 for each of the underlying FCRA violations pursuant to 15 U.S.C. §1681n;

e.  Awarding Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations pursuant to 15 U.S.C. §1681n;

f.  Awarding Plaintiff her costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and

g.  Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT V – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
(Against Transunion)

159. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

160. Trans Union is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

161. At all times relevant, the above-mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

162. At all times relevant, Plaintiff was a "consumer" as the term is defined by 15 U.S.C. §1681a(c).

163. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible

accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

164. The FCRA requires credit reporting agencies to implement procedures and systems to promote accurate credit reporting.

165. If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information, or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

166. Plaintiff provided Trans Union with all relevant information and documentation in her disputes to support her contention that the First Premier and Indigo accounts were fraudulently opened.

167. Upon information and belief, Trans Union prepared Plaintiff's credit reports containing inaccurate, incomplete, and materially misleading information by reporting the First Premier account with an outstanding balance and a past due status, when in fact Plaintiff was not liable for the First Premier account as it was opened fraudulently.

168. Upon information and belief, Trans Union prepared Plaintiff's credit reports containing inaccurate, incomplete, and materially misleading information by continuing to report the hard inquiries for both First Premier and Indigo, when in

fact Plaintiff was not liable for the subject accounts as they were opened fraudulently.

169. A simple review of the relevant documents submitted by Plaintiff would have confirmed that Plaintiff did not open the subject accounts and that Plaintiff was a victim of identity theft.

170. Trans Union failed to conduct any meaningful investigation into Plaintiff's disputes. Instead, it continued to blindly report the false information provided to it by First Premier and Indigo.

171. Trans Union violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished regarding Plaintiff. Upon information and belief, Trans Union prepared patently false, incomplete, and materially misleading consumer reports concerning Plaintiff.

172. Trans Union violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the information in Plaintiff's credit file.

173. Had Trans Union taken any meaningful steps to investigate Plaintiff's valid dispute, it would have determined that Plaintiff was a victim of identity theft and that the subject accounts were fraudulently opened.

174. Upon information and belief, Trans Union took no steps to determine whether the information provided by First Premier or Indigo was accurate or reliable.

175. At very minimum, Trans Union could have requested that First Premier or Indigo provide proof that Plaintiff opened the subject accounts as Plaintiff specifically requested in her dispute. Instead, Trans Union continued to recklessly report false and unreliable information regarding the subject accounts.

176. Trans Union violated 15 U.S.C. §1681i(a)(2) by failing to provide adequate notification of Plaintiff's disputes to First Premier. Upon information and belief, Trans Union also failed to include all relevant information as part of the notice to First Premier regarding Plaintiff's dispute that Trans Union received from Plaintiff.

177. Trans Union violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff with regard to the subject accounts.

178. Trans Union violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the inaccurate information that was the subject of Plaintiff's dispute.

179. Trans Union violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from First Premier or Indigo that the information was complete and accurate, and without sending notice of re-reporting to Plaintiff.

180. Trans Union violated 15 U.S.C. §1681c-2(a) by failing to block the information pertaining to the subject accounts within 4 days of Plaintiff notifying Trans Union of the identity theft.

181. Trans Union violated 15 U.S.C. §1681c-2(b) by failing to promptly notify First Premier and Indigo that the disputed information may be a result of identity theft and that a block of the disputed information is mandated by 15 U.S.C. §1681c-2(a).

182. Trans Union violated 15 U.S.C. §1681c-2(c) by failing to promptly notify Plaintiff within the timeframe prescribed by 15 U.S.C. §1681i(a)(5)(B) that Trans Union has declined to block the disputed information.

183. Trans Union knew that the inaccurate reporting of the subject accounts as belonging to Plaintiff would have a significant adverse effect on Plaintiff's credit worthiness and ability to obtain credit.

184. The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

185. Despite actual knowledge that Plaintiff's credit file contained erroneous information, Trans Union readily furnished Plaintiff's inaccurate and misleading reports to one or more third parties, thereby misrepresenting facts about Plaintiff and Plaintiff's creditworthiness.

186. By deviating from the standards established by the credit reporting industry and the FCRA, Trans Union acted with a reckless disregard for its duties to report accurate and complete consumer credit information.

187. It is Trans Union's regular business practice to repeatedly report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

188. Trans Union's non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiff's credit file and reporting her credit information accurately.

189. Trans Union acted reprehensively and carelessly by repeatedly reporting the subject accounts inaccurately when it knew or should have known that First Premier and Indigo were transmitting false information regarding the subject debts to Trans Union.

190. Trans Union has exhibited a pattern of refusing to correct errors in consumer credit files despite being on notice of patently false and materially misleading information contained in such files, ultimately valuing its own bottom line above its grave responsibility to report accurate data.

191. As stated above, Plaintiff was significantly harmed by Trans Union's conduct.

**WHEREFORE**, Plaintiff respectfully pray this Honorable Court for the following relief:

a. Finding that the practices complained of herein are unlawful and violate the FCRA;

b. Ordering Trans Union to delete all of the inaccurate information pertaining to the subject accounts from Plaintiff's credit file;

c. Awarding Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d. Awarding Plaintiff statutory damages of $1,000.00 for each of the underlying FCRA violations pursuant to 15 U.S.C. §1681n;

e. Awarding Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations pursuant to 15 U.S.C. §1681n;

f. Awarding Plaintiff her costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and

g. Awarding any other relief as this Honorable Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: July 29, 2021                                    Respectfully Submitted,

**TINA RATCLIFF**

By: /s/ *Alexander J. Taylor*

Alexander J. Taylor, *Of Counsel*
Florida Bar No. 1013947
SULAIMAN LAW GROUP, LTD.
2500 South Highland Avenue
Suite 200

Lombard, Illinois 60148
+1 630-575-8181
ataylor@sulaimanlaw.com